# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| GERALD BURTON KENNEDY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 09-655-P-H |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found that the plaintiff, who alleges that he is disabled by cervical degenerative disc disease status post surgery, is capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had a severe impairment of degenerative disc disease of the cervical spine, status post fusion, Finding 3, Record at 11; that he retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for up to six

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 15, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

hours in an eight-hour workday, and sit for up to six hours in an eight-hour workday, but needed to avoid constant movement of the upper spine and neck and, hence, crawling and climbing of ladders, ropes, and scaffolds, that he could occasionally stoop, kneel, and crouch, and that he had to avoid walking on irregular or uneven sloping surfaces or terrain, Finding 5, *id*. at 14; that, considering his age (32 years old, defined as a younger individual, on the alleged disability onset date of January 1, 2007), education (limited), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 17-18; and that he, therefore, was not disabled from January 1, 2007, through the date of decision (August 28, 2009), Finding 11, *id*. at 19.[2] The Decision Review Board declined to disturb the decision, *see id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than

---

[2] The plaintiff was insured for purposes of SSD benefits through June 30, 2007. *See* Finding 1, Record at 11. To obtain SSD benefits, he was obliged to demonstrate that he was disabled on or before that date. *See Mueller v. Astrue*, 561 F.3d 837, 840 (8th Cir. 2009).

his past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(g), 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff contends that the administrative law judge's RFC finding is unsupported by any medical opinion of record, warranting reversal and remand. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 8) at 2-3. The RFC finding indeed is not supported by substantial evidence. Reversal and remand accordingly are warranted.

As the plaintiff correctly notes, *see id*. at 2, although administrative law judges are not precluded from "rendering common-sense judgments about functional capacity based on medical findings," they are "not qualified to assess residual functional capacity based on a bare medical record[,]" *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990). *See also, e.g., Eshelman v. Astrue*, No. 06-107-B-W, 2007 WL 2021909, at *3 (D. Me. July 11, 2007) (rec. dec., *aff'd* July 31, 2007) ("While the First Circuit does permit an administrative law judge to pick and choose among physicians' findings and opinions, it does not permit the crafting of an RFC based on the raw medical evidence of record unless common-sense judgments about functional capacity can be made.") (citations, internal quotation marks, and footnote omitted).

The record contains three relevant expert medical opinions of the plaintiff's physical RFC: (i) an opinion dated May 12, 2008, of Disability Determination Services ("DDS") examining consultant Richard Stockwell, D.O., following Dr. Stockwell's examination of the

3

plaintiff on May 10, 2008, *see* Record at 611-13 (Exhibit 19F), (ii) an opinion dated May 26, 2008, of DDS nonexamining consultant Donald Trumbull, M.D., *see id*. at 637-44 (Exhibit 22F), and (iii) an opinion dated October 17, 2008, of DDS nonexamining consultant Lawrence P. Johnson, M.D., *see id*. at 659-66 (Exhibit 24F).[3]

The administrative law judge stated that she afforded only some weight to the Trumbull RFC opinion and no weight to the Johnson RFC opinion. *See id.* at 17 (Trumbull RFC opinion is given "some weight due to accepting a light residual functional capacity, but additional limitations were added to the residual functional capacity based on subsequent records and claimant's testimony to the extent it was consistent with the records"; Johnson RFC opinion is given no weight because it found the plaintiff capable of medium exertional tasks). She also stated that she afforded "great" weight to the opinion of Dr. Stockwell:

> The file contains minimal evidence for mental and physical impairments since January 1, 2007, the amended alleged onset date of disability. The findings from a Social Security Administration consultative physical examination conducted on May 10, 2008 support the residual functional capacity and the opinion of no heavy lifting and no repetitive movements of head and neck was given great weight and incorporated into the residual functional capacity.

*Id*. at 15.

As the administrative law judge indicated, her findings of a capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand or walk for up to six hours in an eight-hour workday, and sit for up to six hours in an eight-hour workday are consistent with and supported by the Trumbull opinion as well as the Stockwell opinion to the extent that it cautions against heavy lifting, *compare* Finding 5, *id*. at 14 *with id*. at 612-13, 638, and her finding of a need to

---

[3] The three RFC opinions in question were prepared following the plaintiff's application in 2008 for SSI and SSD benefits. *See* Record at 153-63. The record contains a fourth RFC opinion, dated October 3, 2005, of DDS nonexamining consultant Richard Chamberlin, M.D., *see id*. at 486-93 (Exhibit 9F), prepared in connection with a 2005 application for benefits, *see id*. at 85-86, 221-23. The Chamberlin RFC opinion is not at issue here.

4

avoid constant movement of the upper spine and neck are supported by the Stockwell opinion, *compare* Finding 5, *id*. at 14 *with id*. at 612. Her finding that the plaintiff was able to kneel, crouch, and stoop only occasionally also is supported by the Trumbull opinion. *Compare* Finding 5, *id*. at 14 *with id*. at 639.

Nonetheless, the administrative law judge did go on to find greater limits than set forth by either Dr. Trumbull or Dr. Stockwell – namely, an inability to crawl or to climb ladders, ropes, or scaffolds and a need to avoid walking on irregular or uneven sloping surfaces or terrain. *Compare* Finding 5, *id*. at 14 *with id*. at 612-13, 639, 641. She indicated that these additional limits stemmed from records adduced subsequent to Dr. Trumbull's review as well as from the plaintiff's testimony. *See id*. at 17. She did not explain which limitations she drew from the plaintiff's testimony and which from subsequent medical records.

Insofar as appears, the only medical records postdating DDS expert consultant review that bore on the plaintiff's cervical degenerative disc disease were:

1. A record of an emergency room visit on February 12, 2009, during which the plaintiff complained of neck and left arm pain "for a few days" that was worse that night. *See id*. at 673-74.

2. A record of an emergency room visit on June 2, 2009, during which the plaintiff complained of chronic neck pain over the past seven years, worse over the past few months. *See id*. at 683.

3. A record of a June 10, 2009, visit to John Pier, M.D., of Maine Medical Partners Neurosurgery & Spine, in which the plaintiff stated that "he began to have extreme pain several

5

weeks ago" after having done "very well" initially following two neck fusion surgeries in 2001 and 2002. *See id*. at 680.[4]

4. A record of a June 10, 2009, MRI scan, *see id*. at 678, concerning which Dr. Pier stated:

> To my review, the MRI reveals most significant degenerative findings above [the plaintiff's] fusion at C4-5. Below the fusion there are some degenerative changes but I am not convinced it is clinically significant. Nothing on [the plaintiff's] MRI would explain the level of pain and numbness he describes. The greatest area of concern would be on the left at C4-5 greater than C3-4.

*Id*. at 681. Dr. Pier stated that he was not comfortable recommending surgery, "given the fact that some of his weakness does not match the AAC5 radiculopathy." *Id*. He recommended further testing by way of an EMG test and possible treatment in the form of a cervical epidural. *See id*. He added: "Although he describes significant pain, he is uncomfortable utilizing opiates with the strong history of substance use/abuse. Instead, we will simply monitor his symptoms closely and have him followup for further treatment options." *Id*.

The MRI also was interpreted the following day by Brett Applebaum, presumably a radiologist, as showing "[p]rior instrument fusion at C5-6 without findings of nonunion" and "potential for bilateral root compromise probably greater on left than right side at the C3-4 and C4-5 levels." *Id*. at 678-79.

At his hearing on July 28, 2009, the plaintiff stated that he did not know whether the EMG test recommended by Dr. Pier had been scheduled. *See id*. at 64. He testified, in response a question concerning what, if any, treatment he was receiving for his neck and arm, that he was trying to get in to see his doctor to get a referral for an injection of his neck. *See id*.

---

[4] Dr. Pier also noted: "As we get a further history, however, he was applying for social security disability over the last year, which would tend to indicate he has been struggling to some extent within the last year." Record at 680.

6

At oral argument, counsel for the commissioner contended that the fact that an administrative law judge has relied on the opinions of DDS experts who did not have the benefit of review of the full record does not, standing alone, entitle a claimant to remand: pursuant to *Carson v. Barnhart*, 242 F. Supp.2d 33, 38 (D. Me. 2002), the claimant must identify the specific elements of the RFC finding that he or she contends are unsupported by substantial evidence. He added that, in this case, the evidence unseen by the DDS experts was simply cumulative of records that they had seen, a circumstance in which, as noted in *Strout v. Astrue*, Civil No. 08-181-B-W, 2009 WL 214576, at *8-*9 (D. Me. Jan. 28, 2009) (rec. dec., *aff'd* Mar. 5, 2009), an administrative law judge properly may rely on the RFC opinion of a DDS expert who has not had the benefit of review of the full record.

As the plaintiff's counsel rejoined, however, these arguments miss the mark. In this case, the administrative law judge expressly stated, and the record reflects, that she found limitations beyond those identified by the DDS consultants. Therefore, she did not rely, at least entirely, on those RFC opinions. In addition, as the plaintiff's counsel further contended, in this case, the records postdating DDS review cannot readily be discerned by a layperson to be cumulative of those predating that review. The plaintiff began complaining in February 2009 of severe and increasing pain in his neck and/or left arm. *See* Record at 673-74, 680-83. An MRI obtained on June 10, 2009, was interpreted to reveal potentially significant degenerative changes above the plaintiff's fusion at the C5-6 vertebrae. *See id*. at 678-79, 681.

In the circumstances, the administrative law judge reasonably judged complete reliance on the RFC opinions of the DDS consultants misplaced. However, she eschewed further expert guidance, erroneously deriving further RFC limitations, at least in part, from construing raw

7

medical evidence postdating the DDS consultants' review.[5] She compounded this problem by seeming to discredit the very 2009 records on which she presumably had relied, at least in part, in crafting those additional limitations, stating that (i) the onset of acute pain had lasted less than 12 months and, hence, did not meet the commissioner's durational requirement, and (ii) the plaintiff had sought treatment for the allegedly acute pain only twice, in February 2009 and June 2009, and had failed to seek further treatment as of the time of his hearing in July 2009. *See id*. at 15-16.

As the plaintiff's counsel pointed out at oral argument, the administrative law judge erroneously discredited the 2009 symptomatology on the basis that it had not lasted for 12 months. Relevant regulations provide that a claimant's impairment must have lasted, *or must be expected to last*, for a continuous period of at least 12 months. *See* 20 C.F.R. §§ 404.1509, 416.909. The administrative law judge never considered the critical question of whether the plaintiff's impairment, as reflected in medical records covering the period from February 12, 2009, onward, was *expected to last* for a continuous period of at least 12 months. *See* Record at 15-16.

Further, the apparent discounting of the plaintiff's 2009 symptoms on the basis of failure to seek treatment is unsupported by substantial evidence of record. The plaintiff's testimony at hearing suggests that, as of July 28, 2009, he not only was awaiting the scheduling of the EMG testing recommended on June 10, 2009, by Dr. Pier but also was in the process of seeking treatment in the form of a neck injection. *See id*. at 64.

---

[5] At oral argument, counsel for the commissioner suggested that there could have been no impermissible interpretation by the administrative law judge of the MRI result inasmuch as the MRI had been interpreted by physicians. This misses the mark. The impermissible translation is of raw medical evidence into an RFC finding. *See, e.g., Eshelman*, 2007 WL 2021909, at *3. For that purpose, the physicians' MRI interpretation is, itself, raw medical evidence.

8

For all of these reasons, the administrative law judge's finding as to the plaintiff's RFC is not supported by substantial evidence, at least insofar as that finding bears on his SSI application.[6]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 6th day of October, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[6] As noted above, for purposes of his SSD application, the plaintiff was obliged to demonstrate that he was disabled on or before June 30, 2007, the date he was last insured for such benefits.